Matter of Pollak (2020 NY Slip Op 01064)





Matter of Pollak


2020 NY Slip Op 01064


Decided on February 13, 2020


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
SHERI S. ROMAN, JJ.


2018-06614

[*1]In the Matter of Stewart David Pollak, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Stewart David Pollak, respondent. (Attorney Registration No. 2654465)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on April 5, 1995. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by service and filing of a notice of petition dated June 4, 2018, and a verified petition dated May 23, 2018, and the respondent served and filed a verified answer dated July 6, 2018. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated July 23, 2018, pursuant to 22 NYCRR 1240.8(a)(2), which the respondent has not challenged. By decision and order on application of this Court dated September 5, 2018, the matter was referred to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report.



Catherine A. Sheridan, Hauppauge, NY (Michele Filosa of counsel), for petitioner.
Stewart David Pollak, Melville, NY, respondent pro se.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated May 23, 2018, containing four charges of professional misconduct. Following a prehearing conference on October 22, 2018, and a hearing on January 23, 2019, the Special Referee sustained all the charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. The respondent opposes the motion, arguing only mitigation. He asks that the Court impose a public censure.
Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Between April 2014 and October 2016, the respondent maintained an attorney trust account incident to the practice of law at Citibank, entitled "Law Office of Stewart D. Pollak, IOLA, Attorney Escrow," bearing an account number ending in 1042 (hereinafter the IOLA account). In or about April 2014, the respondent represented Maria Rawlins in a Bronx County Surrogate's Court turnover proceeding that had been commenced against her in connection with the estate of Juan Mendez. It was alleged in the turnover proceeding that Rawlins had unduly influenced and defrauded Mendez out of funds in excess of one million dollars. As part of the proceeding, James H. Cahill, Jr., the attorney representing Mendez's daughter, Norma Chavez, obtained financial [*2]restraints against Rawlins. On or about April 14, 2014, an escrow agreement was executed between the respondent and Cahill, which provided that the respondent, as escrow agent, would hold in escrow $200,000 of Rawlins's funds "pending resolution of [the] matter by either stipulation by both parties, Norma Chavez as fiduciary and Maria Rawlins, or, a decision of the Bronx Surrogate's Court making a determination of the rights of the parties herein."
As of April 24, 2014, the balance in the respondent's IOLA account was $19.71. On or about April 25, 2014, the respondent deposited $192,548.41 obtained from Rawlins (hereinafter the Rawlins escrow fund) into his IOLA account in connection with the Mendez estate matter and pursuant to the escrow agreement. Thereafter, the respondent made the following disbursements against the Rawlins escrow fund:
DateCheck No. Payee Amount 
4/28/14No. 144 Respondent $10,000
5/8/14No. 146 Respondent $6,000
6/2/14No. 147 Respondent $4,000
7/25/14No. 149 Respondent $2,000
9/5/14No. 150 Respondent $5,000
10/1/14No. 151 Respondent $2,000
10/14/14No. 152 Respondent $2,500
10/20/14No. 153 Dept. of Finance $172
11/10/14No. 154 Bronx Cty Surrogate's Court $75
(Mendez estate matter)
11/10/14No. 155 LH Frishkoff & Co., LLP $1,000
11/10/14No. 156 Respondent $3,000
12/1/14No. 157 Respondent $5,000
12/15/14No. 158 Respondent $3,000
12/26/14No. 159 Respondent $5,000
1/2/15Debit card Queens Cty Surrogate's Court $1,286
(Estate of Rafael Feferman)
5/15/15No. 160 Maria Rawlins $7,000
6/18/15Withdrawal Maria Rawlins $7,000
(Via bank check)
Between July 2014 and June 2016, the respondent made 30 cash ATM withdrawals, totaling $18,700, against the Rawlins escrow fund.
On September 23, 2016, the respondent deposited $80,517.80 to replenish the Rawlins escrow fund.
On or about October 3, 2016, the respondent issued IOLA Check No. 1687, in the amount of $192,548.41, payable to Cahill as the replacement escrow agent in the Mendez estate matter.
Between April 25, 2014, when the Rawlins escrow fund was established, and October 3, 2016, when the funds were disbursed to Cahill, neither a resolution of the matter by stipulation of the parties nor a decision of the Bronx County Surrogate's Court making a determination of the rights of the parties had been achieved.
Charge two alleges that the respondent commingled client funds with his own funds, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Between May 2014 and March 2016, during the time funds from the Rawlins escrow fund were held in the IOLA account, the respondent deposited his own legal fees into the IOLA account:
Date Amount Source 
5/2/14 $3,500 fees paid by Jason R. Levine
5/5/14 $649 employer paid respondent's share of earned fee
(The Levine and employer funds were removed from the IOLA account on or about 5/5/14.)
6/2/14 $175 employer paid respondent's share of earned fee
3/19/15 $1,683.24 fees paid by Evanston Insurance Co.
1/14/16 $12,500 fees paid by Lawrence Kessler and Hope Kessler
($12,000 of the Kessler legal fee was removed from the IOLA account on or about 3/21/16.)
Charge three alleges that the respondent made numerous cash ATM withdrawals against the IOLA account, in violation of rule 1.15(e) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charge one.
Charge four alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), based the factual specifications alleged in charges one through three.
Based on the evidence adduced and the respondent's admissions, the Special Referee properly sustained all the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.
The respondent has a prior disciplinary history, consisting of (1) a letter of advisement dated May 31, 2017, for failing to keep his clients reasonably informed about the status of their legal matters, and failing to promptly and fully cooperate with an investigation of the Grievance Committee; (2) a letter of advisement, also dated May 31, 2017, for failing to keep his clients reasonably informed about the status of their legal matters, neglecting a legal matter, and failing to cooperate with another investigation of the Grievance Committee; and (3) a personally-delivered admonition dated November 26, 2018, for creation of a false decree of the Surrogate's Court, on which he placed a photocopied signature of a New York County Surrogate.
In mitigation, the respondent pointed out that he cooperated with the Grievance Committee at every stage of the proceeding; that he was unaware that he was suffering from both diabetes and depression, which he claimed was a major contributing factor to his inability to recognize his mistakes as they were happening; that he was unaware that the bank had linked his escrow account to his debit card; that his mistakes were unintentional; and that he is ashamed and embarrassed by his conduct; and that he immediately replaced the funds once the matter was brought to his attention.
We find that the respondent committed serious professional misconduct warranting a suspension from the practice of law. The respondent, a trusts and estates lawyer, was fully knowledgeable about the rules concerning escrow funds. The linkage of his escrow account to his bank debit card, which he claimed he was unaware of, was improper. The respondent's diabetic condition cannot reasonably account for the lack of attention and oversight over his bank accounts over an extended two-year period. Assuming that the respondent truly did not know that he was invading funds that he knew were "not to be touched," willful ignorance, rather than uncontrolled diabetes, is the more plausible explanation for the respondent's use of escrow funds for personal expenses. Moreover, the respondent's disciplinary history is far from unblemished, particularly in light of the admonition issued in 2018 for fabricating a judicial decree. Notwithstanding the respondent's remorse and the fact that he immediately replaced the funds, we conclude that a suspension from the practice of law for three years is warranted.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and ROMAN, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Stewart David Pollak, is suspended from the practice of law for a period of three years, commencing March 16, 2020, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 16, 2022. In such application (see 22 NYCRR 691.11 and 1240.16), the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11, and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Stewart David Pollak, shall comply with the rules [*3]governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Stewart David Pollak, shall desist and refrain from (l) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Stewart David Pollak, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court